Case number 14-6213 R K v. Board of Education of Scott County, et al. Oral arguments not to exceed 15 minutes per side. Justin Scott Gilbert for the appellate. Good morning, your honors. May it please the court. I'd like six minutes for rebuttal, please, judge. I'm Justin Gilbert from Chattanooga. This is Ed Dove from Lexington. And our client is a little boy, nine years old, named Randon. Here's the problem stated concisely. We have more kids who need nurses than we have nurses in our schools. In other words, we just don't have enough nurses for every single school. And so there's two possible solutions to that problem. One solution would be to take the kids with common medical traits and send them to the schools that do have the nurse. Another more nuanced approach, which is the one we urge the court to take, is that with respect to kids with diabetes, which are significantly growing in this nation, let's look at a necessity analysis of whether they truly need a nurse. Well, that's essentially being done most everywhere right now, isn't it? It's starting to be done, Judge Guy. I mean, I'm mindful of what the court said in the first case, that there's the case you'd like us to try and the case that we actually have before us. So we don't want to paint with too broad a brush here. No. I want to paint with the brush that concerns Randon. And that is why it is not necessary for Randon to have a nurse and be sent to that common school. Well, I guess, I mean, how do you trace this necessity idea back to what the statute says? In terms of the ADA and 504, those statutes say that students should not get, should not have different or separate treatment. That is, it's equal access. And the regulations. Well, I don't know. I'm kind of a stickler for what it actually says. I mean, I guess I'll just kind of cut to what I was thinking. It seems to me this case probably turns on whether your client was, quote, denied the benefit of the school's programs. And that would, in turn, raise the question whether attending the elementary school closest to the student's home is a benefit of the school's programs. And, frankly, I'm kind of skeptical that it is. I mean, I sympathize with your client's situation, but when we talk about the benefits of a school program, it would seem to me that we're probably talking about educational benefits as opposed to convenience benefits, carpool benefits, social benefits. And I just want to give you a chance to respond to that. I would respectfully disagree with that. Probably the best literature I've read on that subject is Martha Minow, the dean of the Harvard Law School, who talks about sometimes treating kids differently does stigmatize them. And so when you tell Randon he cannot go to the school where his neighborhood kids go and he cannot play on the ball teams that those kids are on, that is, in her words, reinforcing his difference. And it sets him on a path of thinking he's different instead of a path of thinking he's the same. And so that takes us back to is it necessary to do that? And the regs under the ADA in 504, and I think to Judge Guy's point, states around the country are actually looking at is it necessary, whereas Your Honor may be looking at it as where is FAPE provided, a free appropriate public education, like under the IDEA? Is this textbook the same as this textbook here? And I would just suggest that let's have a deeper analysis of that. Let's look at the social fabric and let's look at the stigma that that can cause kids if they don't really need it. Well, I mean, I guess, I mean, I understand your argument, and it's a thoughtful argument. I just, the stigma idea seems to be possibly something separate from the question whether he's been denied a benefit of the school's program. But I don't want to belabor it. Could a benefit of the school's program be the benefit of attending a neighborhood school where you are with your neighbors and you have common experiences in the school and in the neighborhood? Indeed. That is a huge benefit for the child. I'm not old enough for the Park and Mills decisions from the 1970s, but I would just urge we don't go back to that time of talking about sending kids to separate locations when it's not necessary. Who should decide whether it's necessary? Ideally, an IEP, or excuse me, in this case, a 504 team, should conduct an individualized assessment. That's what the Sixth Circuit said the first time. And I was a little bit disappointed in Judge Hood suggesting that we had not developed evidence of why it's not necessary for Randon because if you look at the record, Your Honors, we have put let me just give you six quick things because I do think this little boy is spectacular. His A1C level, which is his management of his diabetes over time, is outstanding the whole time, which is difficult for a little boy, frankly. But that's number one. The endocrinologist is on our side. She says he doesn't need a nurse. That's Dr. Hong. Dr. Scott from the University of Kentucky, we've compiled her affidavit, and she shows how all these leading medical and scientific sources agree that you don't always need a nurse. And then what I don't think appears in the district court's case enough is the deposition I took of Mr. Harrison. Now we got remanded because there wasn't an individualized analysis, and they wanted to know what happened in December 2009. So I took Mr. Harrison's deposition. He's the health director. And yes, he equivocated depending on whether I or Mr. Chinowith was asking the questions, but if you look at the chart in my brief, he says this boy is the ideal candidate. This boy was always in control. This boy. So in this case, the district judge granted summary judgment to the school system, and so you're saying that there are at least fact questions that preclude the granting of summary judgment based on these fact matters that you're presenting. I do say that, but I would go further. I would say the proof is so overwhelming that this child is so well-controlled that we should receive the judgment. I say that for some of the reasons I just cited, but I also say it because of paragraph 25 of the answer, where the school says they believe that use of an insulin pump is a per se medical judgment which requires a nurse. There's nothing individualized about that. That's a blanket. But there's no testimony that they had a blanket policy. In fact, there's testimony that in some schools there were children with diabetes. I would agree with you. There's no blanket policy. But with respect to this child, he did not receive an individualized analysis. They assume that since you use a pump, that's an infusion, therefore you need a nurse. Well, let's assume that everything would have been just fine if they had left him in the school he wanted to go to with a lay person supervising his insulin treatments and whatnot. It's kind of ironic that the school is sought to be punished because they were insisting on a higher level of supervision for him, a more trained person. And it gets down to, should it be actionable? School boards, it's not easy these days. They're under fire all the time. Anything that goes wrong, they're held responsible for. Don't they get to make a judgment that, in hindsight, you might have gone the other way on without being subject to damages? This is a damage lawsuit. I would suggest, Your Honor, that your query goes to exactly what Minow was writing about, the dilemma of difference, that sometimes treating people differently is necessary, but sometimes it is harmful, and that maybe the best analysis that I've seen of that is from the... You're back to talking about national policy. I'm sticking to the facts of this case. Well, I am too, Your Honor, because this little boy is maybe the best example that we're going to have in the United States to show that we shouldn't just assume people need nurses when they don't and treat them differently when it's unnecessary. And I would just like the Court's analysis to turn on the issue of necessity, and if it does with respect to this little boy, Randon, it was just unnecessary and therefore discriminatory. Am I right that he is now in the school that he wants to be in, so injunctive relief is not at issue in this case? It is simply a damages case? I see my time is up, but may I respond, Your Honor? Interestingly, when we were here the first time at the Sixth Circuit, just after that, the school decided, okay, now he is mature enough to go to his school, and they did put him back in second grade with a lay assistant. Shortly later, the parents moved? They did move because, Your Honor, they have four children. They had another child. The dad is a pediatrician. They needed a bigger home, and they're upwardly mobile people. So he's not in the school that he wanted to get into? At this point, I mean, five years later, he's not, Your Honor, correct. But you're not asking for injunctive relief now, right? The only sense that we would be asking for injunctive relief is to make sure that they don't say ever again that because he still uses an insulin pump, that that could be a reason to exclude him in the future. Is that a live issue, though, at this point? I mean, there's no threat, right, that they're going to do that. I mean, we don't sort of issue decisions unless there's a real prospect, right, that the bad thing could happen, I would think. I can't sit here and say that it is about to happen, Your Honor. I couldn't. And there's no evidence at all in the record of any threat that it will. No, the case has lasted five years. Right. All right. Thank you. Grant Chenoweth for the Board of Education of Scott County, Kentucky. Mr. Dove, Mr. Gilbert, may it please the Court, this case is not, in the school district's view, about segregation, despite the number of times that that word appears in the appellant's brief and perhaps in the brief of the United States Department of Justice. This young man, who has been referred to in the record prior to oral argument today just by initials, he has always, always, from the first day of kindergarten, been educated with non-disabled peers in an entire classroom of non-disabled peers. So it is not a case of a school district taking him and placing him in a room solely with other students with disabilities so that he has no access to the regular education classroom with non-disabled peers. He is not segregated. The policy of the school, if I'm correct, was that all children with diabetes would be put in the schools that had nurses. Is that a fair statement? It is not. There were some students who had diabetes who had had the diagnosis long enough that they had progressed far enough in their self-care that they were essentially self-managing with just supervision of staff. Students who needed direct intervention by staff, direct assistance by staff, were placed at schools where there were nurses present, and that was not even an absolute policy. In part, that depended on where the school was in the county in proximity to the hospital, to the EMS services. As compared to a school that's more remote, that's nowhere near an EMS station or a hospital, a student attending there that didn't have access to emergency health care might be moved to a different school so that they were closer to either direct nursing services or to emergency care. Part of this case turns on the notion of what deference is owed to the United States Department of Justice and the United States Department of Education on their interpretive guidance. In 2013-2012, the Department of Justice issued a finding letter in Alabama that really has been distributed nationwide as what the law ought to be going forward, including telling the state of Alabama, change your nursing regulations if your nursing regulations keep lay people from administering injections. That was driven by them saying, essentially now it is the policy of the Department of Justice under the American with Disabilities Act that students do have a right to attend their neighborhood school. At the time relevant to this case, the 2009-10 and 2010-11 school years, that was not the guidance from the Department of Justice. There was a 2002 letter written by the U.S. Department of Education's Office for Civil Rights, and the U.S. Department of Education is the Department of Justice's designee by regulation for interpreting the American with Disabilities Act for public secondary and primary schools. So the Department of Education had, in response to questions from the Attorney General of Alabama, had said, that it is fine, it does not violate the ADA or Section 504 to group students with low incidence disabilities who need specialized care, specialized medical care, to group them at schools where that service is available, and that it just flat out, that policy of the state did not offend any federal law that those two agencies were charged with enforcing. And what year was that? Did you say? I'm sorry, I missed it. It's a 2002 guidance letter. It's in the record at 89-4, or 103-3. It's document 103-3. In 2012, when the Department of Justice took a closer look at Alabama, they told the Alabama Attorney General, as one of the compliance steps in that letter, they said, withdraw your Attorney General opinion that relied on the Department of Education's 2002 letter. Change your nursing guidelines. All this is, again, in the record. When the Alabama Attorney General withdrew their opinion and distributed that statewide, they said, the Department of Education and Department of Justice can't even agree on what federal law is, so we'll withdraw our opinion that we thought was interpreting federal law consistent with federal guidance. If deference is owed in this case, it's owed to the 2002 and 2005 guidance letters that were extant at the time of the facts in this case. I guess the concern that I have is whether summary judgment is premature here or not, or whether there aren't fact questions that would warrant vacating and remanding to the district court. The reason I don't believe there are, Your Honor, I'll have to say it depends. It depends on what you say the guiding law is. If you determine that the law is what the school district believed it was up through the time of this case, what the Department of Education had said it was since at least 2002, then the facts, even those disputed issues of fact that might be present in the record, they don't matter because the necessity element that Mr. Gilbert has focused on, that the Department of Justice in their brief focuses on, that necessity issue was not part of the applicable law as interpreted by the Department of Education, both the Department of Education enforcing 504 and the Department of Education as the Department of Justice's designee interpreting ADA. So the necessity element did not become the federal government's position until after the facts in this case were all already behind us. So this case only takes us up through the child's first grade year, which is the spring semester of 2011. So in 2012 is when this new guidance comes down, and they want that to be retroactively applied to say you should have known there was a necessity element that we had never articulated before on this question and instead had given the exact opposite guidance. So if your honors accept the Department of Justice's current interpretation of the reg and statute and say it applied retroactively, despite our reasonable reliance on prior guidance, then the fact issues that Mr. Gilbert has pointed out to you, I think those issues do become relevant. But if the school district was entitled under the Olmstead case to rely on the guidance they had received from the U.S. Department of Education, then those fact issues are not relevant because the necessity or not wouldn't have mattered. Well, I mean, what we're applying here is the statute, not this sort of spaghetti of regulations and letters and so on. The statute has no language at all going there. I mean, I guess I don't mean to hijack the question, but I'd be interested in hearing why, assuming you think this, why you think there is no genuine issue of fact to be resolved under the statute. There are four cases that are referenced in our brief, the Urban case from 1996, the Timothy H. case from 1999, the Flower Bluff case from 1996. None of those are Sixth Circuit. That's all right. I mean, because the Tenth and the Fourth Circuit. The Tenth, the Eighth, and the Fifth have interpreted. All of them, looking at the statutory language, not regulatory guidance, not interpretive letters from the departments, looking at the statute said there is nothing in Section 504 or the Americans with Disabilities Act that would suggest even a preference for a neighborhood school placement, and those cases each said substantial deference is owed to the individual school district as to issues of staffing, as to issues of what services to provide at what locations, and, in fact, said it was a matter that Congress intended to leave to the states to determine those issues about staffing and consolidating of services. Well, I certainly understand that, but what is your—I mean, I said something along those lines in a question to Mr. Gilbert, and he made the point in response that, you know, it's possible that a student would feel stigmatized and more different than the student should feel from his or her fellow students when they get put in a different location than the one they'd normally be zoned for. What's your response to that? A couple of points on that. One, there's not any evidence in this record, discovery record, that suggests that R.K. even was aware of which school his parents thought he ought to be attending. He began kindergarten at Ann Mason Elementary School and attended there full-time for two school years. Academics were great. Peer interactions were great. Ideal student, model student, undisputed in the record that he was an excellent student. There's no notion of any emotional harm. The superintendent's affidavit, after her thorough review of all of his educational records, there is simply no notation in the records that he suffered any stigmatizing effect, any isolation from peers, any lack of developing normal friendships. But that wasn't the basis that the district court granted summary judgment on, was it? It was not, but that's in response to Mr. Gilbert speculating as to the stigmatizing effect and relying on expert opinion that's not in the trial court record from the president of Harvard. And the basic question is, should this case go forward so that you could point out that type of information in response to the claim on the other side that this child was stigmatized? The speculation on appeal from summary judgment that a child might have been stigmatized seems to me to come too late. It is the plaintiff's obligation to prepare a sufficient factual record for the court to find that the plaintiff has at least gotten the ball over the net to make it worth going to trial over. The previous remand suggested that the plaintiff may want to depose the individuals who were involved in the decision-making. They deposed an individual that was hired in October 2009 who was not involved in the initial decision-making regarding where the student was placed. I shouldn't, as the defense counsel, be obligated to create a fact record to defend a case that hasn't yet been brought by any evidence, rebutting facts that have never been given to me. It puts me in an untenable position of creating a fact record to rebut a case that's not been made. The plaintiff has the obligation to come to you and show that they have stated a claim. This, in part, was a failure to state a claim, a failure to assert sufficient facts to warrant taking the case to a jury. And on that type of issue, they have not put any facts in the record. I would like to ask you about a different point, if I may. You argue in your brief that the plaintiffs, I guess, you know, this is, as Judge Guy points out, a damages case at this point, and you make the argument that they have not exhausted their administrative remedies. Can you, I mean, can you just, I guess, explain that a little bit? I can't. When the original complaint was filed, there was no express allegation that any particular regulation of the Department of Justice for ADA or the Department of Education for Section 504, that any particular reg had been violated, that we failed to comply with any specific procedural guidance from the departments. When they amended the complaint at the suggestion of this court, the previous panel of this court, they added an express claim that regulations had been violated. Through the course of that, it is our position that the, when you read through the case law on the administrative exhaustion requirement under the Individuals with Disabilities Education Act, it says no claim can be brought under 504 or the ADA seeking relief that would be available under the IDEA without exhausting the administrative proceedings available under the IDEA. So you're saying if we go back in time to when a student is actually being sent to the different school, the IDEA would have provided a remedy and they were required to exhaust that potential remedy before they turned to these other statutes? Yes, and the reason for that is because the administrative hearing process is particularly suited to looking at the questions of whether enough information has been gathered by a school district to make decisions about the child and whether all the procedures have been complied with. Didn't they have a 504 meeting, though? They had a 504 meeting. What was missing in your view that makes this unexhausted? The 504 meeting is what the regulation requires the school district to convene. The administrative exhaustion is an independent hearing officer outside the school district that reviews. If the parents say at that 504 meeting you failed to give us all of the rights we were entitled to, you failed to gather all the right documents, include all the right people, et cetera, that hearing officer can tell the school district go back and try again. But I thought that the IDEA was for children, for instance, who had learning issues, and I don't really understand how it interacts with a child who's perfectly normal in terms of learning but has diabetes. So if you could, would you point me to the exact provision that you would suggest shows that there's a requirement for an IDEA exhaustion? It is just that exhaustion requirement as stated in the IDEA that before proceeding with a claim under those other laws, you have to exhaust the administrative remedies. And under the 504 administrative regulations, it requires school districts to allow for an administrative hearing and says if you provide the same type of hearing that's set out in the IDEA regs, you will have complied with the administrative hearings requirement under Section 504. There is substantial case law that I have to acknowledge that says if there's no allegation that a child might have been eligible under the IDEA, then the exhaustion requirement can't apply to that child when he brings a 504. I'm having a hard time keeping up with you mentally. So substantial authority, what? It says if there's no argument at all that the child might be, and you've got three statutes that all have their definition of disability. So it's that if there's no argument that the child might be disabled as defined in IDEA, then the exhaustion requirements under IDEA can't be argued to apply. That's the case law there. That they are not alleging that their child has IDEA issues and that they need to have an IEP and all of the other stuff that goes with the IDEA. Quite frankly, that is a question for you all to decide. But where they're arguing that there might be a stigmatizing effect, that there might be a harmful effect on the placement decision that's made, that administrative requirements haven't been met, that this child has never had a meeting at all under the IDEA to determine whether his disability might also qualify him for services there. Certainly if a child has substantial swings in their blood sugar, it could render them unable to be in the classroom a sufficient amount of time. So it's not impossible that a child with diabetes could qualify under the IDEA. It just has simply never been looked at in this case. That's because the parents are not claiming that their child has any problems. They're claiming that he is perfectly modulated in terms of his diabetes treatment. Which to me argues against any notion that he's been damaged or stigmatized at all by being placed at Ann Mason Elementary School rather than at Eastern Elementary School, which are equidistant from their home. And there's no evidence in the record other than the father saying the reason they chose Eastern was so that he could go to school with his friends. There's no evidence in the record that by the time he started school that any kids that lived on his street or on his block attended Eastern Elementary. So the notion that he was denied the opportunity to attend school with peers that he already knew is also not supported by the record. It's a speculative benefit that the parents say he might have had, but there's no evidence in the record that say he was denied that speculative benefit. Thank you. Can I begin with just some basic unfairness? And that is you all are a different panel than we had previously, I recognize. But previously the issue before this Sixth Circuit was whether Randon was out of control, erratic, whether his diabetes presented such a danger that he needed a nurse. And Harrison, their witness, said that was the case. We were remanded on that factual issue of whether he really was in control. And that's the record we developed. And it is an outstanding record that Randon is in fact in control. So now when we come back to you all, different panel granted, the issue is different. Now they don't argue that Randon is out of control and erratic. Now they argue a squarely legal issue. Well, they lost, so they're not bound by judicial estoppel by what they said in the first. I mean, I don't really see where this goes in terms of our decision today. Well, I'm just saying that if the issue is necessity, we have the proof in the record, Judge Kethledge, that for Randon it was not necessary to send him to a different school. And for them to have said that the first time, they were stigmatizing him. They were harming him. They were saying, you are out of control. You can't be here. You have to go there. So that's the point I'm making. I do agree with you, Judge Kethledge, that there's a lot of spaghetti with OCR. And in fact, if you look at page 26, footnote 10 of our brief, you'll see a number of OCR decisions that support our position after the one that Mr. Chenoweth has cited. I would just ask this court, if Randon is not the child who can win, who in the country can? Well, what about your opponent's argument that the federal government changed its position between 2002 and 2012 and that the school board should be able to rely on the federal government's position that was in existence in 2009 when your client was in kindergarten? My response to that is it's incorrect. I know which 2002 OCR opinion he's referring to. And that opinion talked about it's okay to cluster kids with medical needs who truly do need a nurse. It's okay to send them to a common school if they truly need it. But if you look at page 26, footnote 10 of our brief, there are many other OCR decisions thereafter telling schools that if it's not necessary to do that, you don't need to do that. And so that is actually consistent with our position in this case, that to determine if a different or separate benefit under ADA is occurring, let's look at the necessity of sending the child to a different school. As I understand your argument that attending the school nearest to the student's home is a benefit of the school's programs, that argument, or if we were to adopt that, that does seem to present a conflict with decisions by the Fourth and Tenth Circuits. Is that your sense as well? I think I've suggested that that Urban case from the Tenth Circuit is no longer good law because at the time they were deciding that, they were of the view that the ADA and 504 do not require any kind of reasonable accommodation or affirmative action. So I think those are older cases and they're not good law. The statute hasn't been amended since then, has it? You would know better than I. It's an honest question. I'm not sure I would. It's an honest question. I'm not sure I would. The ADA has been amended in 2009 on that particular text. I don't know. But even under this circuit's precedent, under the McLaughlin case, there is a presumption that Randon is entitled to his neighborhood school. And so if it's not necessary to send him to a different school, he should enjoy that presumption. Suppose in these schools that you're in question here, let's just suppose that they were equi-distant from the plaintiff's house. Would you have a case? I would have a case, Your Honor. Joel Knight and Raylene Knight purchased their home in the specific district for this specific school. Schools aren't just interchangeable. They're not all the same. And they've got four kids. If you're a parent, I have multiple kids. You want your kids to go to the same school, learn their programs, learn their teachers, learn that sort of thing. So the fact that there's equi-distance. And it isn't about neighborhood schools because under my hypothetical, they'd both be the same neighborhood. It is about the school where they chose to live to which they were zoned. Well, are you saying that the school that he would have gone to is better academically or that he was deprived of some academics? In the judgment of these parents, this school was better academically. That's why they bought their house there. I understand that, but in the judgment of a lot of parents, but that doesn't decide the case. A lot of people want a lot of things, but the question is what does the law require? Right. Our position is that Randon should be treated equally to his neighborhood peers so that he can play on the same ball teams, he can go to the same extracurricular activities as those kids, not a separate neighborhood. So we do think that that is a separate. Is there a lot of ball teams for 4-year-olds? Well, actually, yes. Actually, yes, Your Honor. By the school? I can only answer from my own school. The answer would be yes. I honestly don't know about this particular school in Kentucky. So your red light is on. It is. Thank you, Your Honor. Thank you very much. Thank you both for your argument. The case will be submitted with the clerk calling.